*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1615**

State of Minnesota,
Respondent,

vs.

Kurt Matthew Baker,
Appellant.

**Filed October 11, 2016
Affirmed
Bratvold, Judge**

Dakota County District Court
File No. 19HA-CR-15-1013

Lori M. Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Amy A. Schaffer, Assistant County Attorney, Hastings, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota; and

Jane E. Maschka, Eva B. Stensvad, Faegre Baker Daniels LLP, Special Assistant Public Defenders, Minneapolis, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Hooten, Judge; and Bratvold, Judge.

**BRATVOLD**, Judge

Appellant Kurt Matthew Baker appeals from his conviction of second-degree possession of a controlled substance, arguing that the district court erred in denying his pretrial motion to suppress evidence of an illegal search. Because Baker's issues are either based on a misreading of the district court's findings of fact or forfeited due to failure to raise the issue at the district court, we affirm.

## FACTS

On March 31, 2015, at approximately 4:30 p.m., an off-duty deputy with the Dakota County Sheriff's Office was driving home after work in his personal vehicle; he was not in uniform. The deputy saw a red pickup truck in a parking lot "driving at a high rate of speed"; a gray sedan was following the pickup. The deputy assumed the drivers were "high school kids," continued along, and moved into the left turn lane. The deputy then heard a car honk, and saw the pickup and sedan make illegal left turns in front of his vehicle. He decided to follow. Shortly thereafter, he saw the pickup, driven by appellant Kurt Baker, enter a hotel parking lot; the pickup "jumped a curb," and parked.

The deputy stopped his vehicle, and saw Baker get out of his truck and run toward the sedan. The deputy, while still in his vehicle, told Baker to return to his truck, which Baker did. The deputy radioed police about a "possible altercation," and several officers responded within minutes.

After talking to the occupants of the sedan, the deputy went over to talk with Baker, who was sitting in his truck. The deputy testified that he was familiar with Baker and knew

that he sold drugs in the past. The deputy also testified that, while he was speaking to Baker at the driver's open window, he noticed a closed pocket knife in the cup holder. He clarified on cross-examination that he "wasn't worried about the knife."

The deputy testified that Baker said "he had a note he found on his truck, that the people that were in the [gray] car left the note on his truck," that he "wanted to get away from them," and that "they were chasing him." When Baker reached over to grab the note, the deputy testified that he "stuck [his] nose in there [and] got an odor of marijuana." On cross examination, the deputy agreed that he "kind of stuck [his] head in" when he was standing outside the truck. The district court found that the deputy "stood next to the open window, leaned in, and smelled the odor of fresh marijuana."

The deputy arrested Baker for misdemeanor reckless driving, and then searched his truck, eventually finding a baggie of 1.95 grams of marijuana inside a cloth bag, under a plastic liner, inside a closed center console. The deputy also found a second baggie, a digital scale, a glass bubble pipe, and a third baggie containing smaller baggies. Police tested the substance in the second baggie, which was determined to be 9.548 grams of methamphetamine.

Baker was charged with second-degree controlled-substance crime. *See* Minn. Stat. § 152.022, subd. 2(a)(l) (2014) (possession of methamphetamine more than six grams). Because Baker had prior controlled-substance convictions, he was subject to a mandatory three-year sentence. Minn. Stat. § 152.022, subd. 3(a) (2014). Baker was never charged with reckless driving.

Baker filed a motion to suppress evidence and to dismiss the charges, arguing that the drugs were obtained as a result of an illegal stop, seizure, and search. At a contested omnibus hearing, Baker's counsel identified the issues challenged as "the basis for the search and basis of jurisdiction" because the deputy was not on duty. The state presented the testimony of two witnesses: the deputy who performed the search and an evidence technician for the Dakota County Drug Task Force. The parties stipulated to the admission of the squad car video of Baker's arrest, but neither party offered any testimony explaining the video.

In his written submission after the hearing, Baker argued that the court must suppress the evidence because the "claimed smell of fresh marijuana is not credible and was a pretext for a search without a warrant." Baker stated that it "strains credulity" that the officer could smell "less than two grams of marijuana" inside a "closed plastic baggie inside a zippered canvas bag under a hard plastic liner inside a closed hard plastic center console." Baker's written submission did not mention jurisdiction, the stop, that the deputy leaned into the vehicle, or the deputy's off-duty status. The state's written submission pointed out that the defense had dropped the jurisdictional argument and argued that probable cause supported the search of the pickup under the automobile exception.

The district court denied Baker's suppression motion, concluding that (1) the stop was legal because the deputy saw Baker commit a misdemeanor traffic offense, and (2) the search was legal under the automobile exception to the warrant requirement because the deputy stood outside the pickup, spoke with Baker, and "observed the odor of fresh marijuana emanating from inside [Baker's] truck." The district court also denied Baker's

motion to dismiss for lack of jurisdiction, although it was not briefed, reasoning that an off-duty police officer may make an arrest in his own jurisdiction, which was what happened in Baker's case.

Baker was found guilty following a stipulation to the prosecution's case to obtain appellate review of the pretrial ruling pursuant to Minnesota Rule of Criminal Procedure 26.01, subdivision 4. Baker appeals the district court's denial of his pretrial suppression motion. *Id.*, *see also State v. Lothenbach*, 296 N.W.2d 854 (Minn. 1980).

This appeal follows. Baker argues the search of his vehicle was unconstitutional and that an off-duty officer is not permitted to conduct a warrantless search. Baker does not challenge the legality of the stop, the officer's ability to smell the marijuana, or jurisdiction.

## DECISION

### I. Sniff Search

Both the United States and Minnesota constitutions prohibit "unreasonable searches and seizures." U.S. Const. amend. IV; Minn. Const. art. I, § 10. "A search occurs whenever governmental agents intrude upon an area where a person has a reasonable expectation of privacy." *In re Welfare of B.R.K.*, 658 N.W.2d 565, 578 (Minn. 2003) (quotation omitted). "Generally, a search conducted without a warrant issued upon probable cause is *per se* unreasonable." *State v. Burbach*, 706 N.W.2d 484, 488 (Minn. 2005) (quotation omitted). This rule is subject to "a few specifically established and well delineated exceptions." *Id.* (quotation omitted). For example, the automobile exception permits police to search a vehicle without a warrant if "probable cause exists to believe

that a vehicle contains contraband." *State v. Flowers*, 734 N.W.2d 239, 248 (Minn. 2007). The burden is on the state to demonstrate that an exception applies. *State v. Licari*, 659 N.W.2d 243, 250 (Minn. 2003).

Under the exclusionary rule, evidence seized in violation of the constitution generally must be suppressed. *State v. Jackson*, 742 N.W.2d 163, 178 (Minn. 2007). Whether the exclusionary rule prohibits the admission of evidence in a particular case is a question of law, which we review de novo. *State v. Askerooth*, 681 N.W.2d 353, 359 (Minn. 2004). We review the district court's factual findings for clear error. *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008). When reviewing a pretrial order denying a motion to suppress evidence, we may independently review the facts not in dispute and determine whether as a matter of law the district court erred by not suppressing the evidence. *Id.*

The odor of marijuana emanating from a vehicle is sufficient to provide probable cause for a search pursuant to the automobile exception to the warrant requirement. *See State v. Schultz*, 271 N.W.2d 836, 837 (Minn. 1978) (noting that officer properly conducted warrantless search of vehicle for marijuana where officer smelled marijuana emanating from the passenger compartment before the search); *State v. Wicklund*, 295 Minn. 403, 405, 205 N.W.2d 509, 511 (1973) (upholding warrantless search of vehicle after officer smelled odor of burnt marijuana and holding Fourth Amendment "does not require law-enforcement officers . . . to close their eyes lest they see, in plain sight, evidence of criminal conduct, . . . neither does it require them to avoid using their other senses"); *superseded by statute*, Minn. Stat. § 152.15, subd. 2(5) (1976), *as recognized in State v. Ortega*, 770

N.W.2d 145, 149 n.2 (Minn. 2009) (clarifying Minnesota caselaw regarding "criminal amount of marijuana" for search incident to arrest exception).

Baker argues that the dispositive issue is whether the deputy's "sniff search" was itself a separate search requiring probable cause. Baker contends that the deputy's "search began the moment he 'leaned in' and 'stuck [his] nose' into Mr. Baker's truck." Baker relies on a string of cases, published and unpublished, from federal appellate and trial courts, as well as state appellate courts of other jurisdictions, for the proposition that "'leaning into [a] car' constitutes a search."[1] *See, e.g.*, *United States v. Montes-Ramos*, 347 F. App'x 383, 389–90 (10th Cir. 2009) ("a police officer's intentional act of intruding a vehicle's air space, even if by only a few inches, constitutes a search within the meaning of the Fourth Amendment); *Allen v. Thompson*, 14 F. Supp. 3d 885, 894 (W.D. Ky. 2014) ("Leaning in through a car window may constitute a search."); *United States v. Harris*, No. 2:10-cr-123-PPS, 2013 WL 1703576, at *3 (N.D. Ind. Apr. 18, 2013), ("[I]f a police officer intrudes on the interior airspace of a vehicle, that generally will be a 'search' for Fourth Amendment purposes."), *aff'd*, 791 F. 3d 772 (7th Cir. 2015); *State v. Dickens*, 633 So. 2d 329, 332 (La. Ct. App. 1993) ("[I]f an officer sticks his head into a vehicle for the purpose of seeing and/or smelling things he could not see or smell from the exterior of the vehicle,

---

[1] Minnesota courts have not ruled on this question of law. Baker cites an unpublished decision of this court. *See State v. Jacox*, No. A09-668, 2010 WL 2035618, at *5 (Minn. App. May 25, 2010) (stating that a trooper's "leaning into the car during the federal ID sticker check was a search."). But an unpublished decision of this court is not precedent. Minn. Stat. § 480A.08 (2014); *see also Vlahos v. R&I Const. of Bloomington, Inc.*, 676 N.W.2d 672, 676 n.3 (Minn. 2004) (stating that unpublished opinions are not precedential) (citing *Dynamic Air, Inc. v. Bloch*, 502 N.W.2d 796, 801 (Minn. App. 1993)).

his inspection goes beyond that which may be seen or smelled by a lawfully positioned inquisitive officer and such actions constitute a search."); *cf. United States v. Collins*, 321 F. 3d 691, 695 (8th Cir. 2003) (assuming without deciding that an officer's "act of leaning into the vehicle constituted a search"). *See also* 1 Wayne LaFave, *Search & Seizure* § 2.5(c) (5th ed. 2012) (stating when an "officer leans into an open window to detect the odor, then there *has been* a search").

The state responds that this court should not consider Baker's argument regarding the sniff search because it was raised for the first time on appeal. Generally, this court "will not decide issues [that] were not raised before the district court, including constitutional questions of criminal procedure." *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996). "At the court's discretion, it may deviate from this rule when the interests of justice require consideration of such issues and doing so would not unfairly surprise a party to the appeal." *Id.*

Although the state argues that Baker waived this issue, we note that the Minnesota Supreme Court has recently clarified that forfeiture is the proper framework for addressing issues raised for the first time on appeal. *State v. Beaulieu*, 859 N.W.2d 275, 278 n.3 (Minn. 2015) (noting that "waiver is the intentional relinquishment . . . of a known right" and forfeiture is a "failure to make a timely assertion of a right" (quotation omitted)), *cert. denied*, 136 S. Ct. 92 (2015). "[A] constitutional right, or a right of any other sort, may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *Id.* at 278 (quotation omitted).

"The forfeiture doctrine reflects the need to encourage all trial participants to seek a fair and accurate trial the first time around." *Id.* at 279 (quotation omitted).

The appellate courts have a limited power to correct errors that were forfeited in the district court "because [a] rigid and undeviating judicial [ ] application of the forfeiture rule would be out of harmony with . . . the rules of fundamental justice." *Id.* (quotation omitted). More specifically, plain-error review is available for errors that have been forfeited in the district court. Minn. R. Crim. P. 31.02 (providing that "[p]lain error affecting a substantial right can be considered by the court on motion for new trial, post-trial motion, or on appeal even if it was not brought to the trial court's attention."[2]

But even assuming that Baker did not forfeit this issue, or that we review for plain error, Baker cannot prevail on the merits of his claim. Baker's argument is predicated on two statements made by the deputy at the omnibus hearing and on one finding of fact made by the district court. Baker argues that the deputy testified twice that he "stuck his nose in there" and the district court found that the deputy "stood next to the open window, leaned in, and smelled the odor of fresh marijuana." From this, Baker claims the record supports his contention that the deputy leaned into Baker's truck before he smelled the marijuana.

Baker ignores that the district court made an additional finding of fact that is directly relevant to the issue on appeal: the deputy detected "the odor of fresh marijuana emanating

---

[2]  To prevail on appeal under the plain-error standard of review, the appellant must demonstrate (1) an error, (2) that is plain, and (3) that affects the [appellant's] substantial rights. *State v. Griller,* 583 N.W.2d 736, 740 (Minn. 1998). If the appellant satisfies the plain-error test, appellate courts may correct the error if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Beaulieu*, 859 N.W.2d at 279.

from inside Defendant's truck."  Emanation, a word derived from emission, is "something that issues from a source." *The American Heritage College Dictionary* 457 (4th ed. 2007). An emission is a "substance discharged into the air."  *Id*. at 459. Thus the district court found that the deputy smelled the marijuana from outside the truck, clarifying the earlier finding that the deputy "leaned in."  The district court appears to have determined the deputy's statements mean that he leaned *toward* the window of the pickup, but not inside the pickup.  The district court considered the deputy's testimony as well as the squad car video recording and concluded that the deputy smelled marijuana emanating from the truck.  Based on these factual findings, the district court determined that the marijuana provided probable cause for the subsequent automobile search.  The district court's determination that the odor emanated "from inside" the truck is consistent with our independent review of the record and is not clearly erroneous.

Because we conclude that the search of Baker's truck was supported by probable cause based on the deputy's smell of the odor of fresh marijuana emanating from inside the pickup, the search was constitutional under the automobile exception.  We need not reach the parties' remaining arguments regarding the expansion of the stop and alternative bases for the search.

## II.    Search by off-duty officer.

Alternatively, Baker argues that the evidence "should be suppressed for the additional independent reason that [the deputy] was off-duty when he took it upon himself to conduct a warrantless investigatory search of Mr. Baker's truck."  Baker asks this court to, as a matter of first impression, "hold that a search is unreasonable under the Fourth

Amendment and Minnesota Constitution when an off-duty officer uses his state-granted authority to conduct a warrantless investigatory search, especially when that investigatory search is conducted in the presence of on-duty officers." In response, the state argues that Baker waived this issue by failing to raise it at the district court.

The district court upheld the off-duty deputy's authority to arrest Baker because this was the issue argued at the omnibus hearing. In doing so, the district court relied on Minnesota law providing that an off-duty peace officer may make warrantless arrests "when a public offense has been committed or attempted in the officer's presence." Minn. Stat. § 629.34, subd. 1(c)(1) (2014). Baker argues for the first time on appeal that there is a "clear distinction between warrantless arrests and warrantless searches."

We conclude that Baker forfeited this issue and decline to consider it. Baker did not raise this issue in his suppression motion, develop it at the omnibus hearing, or brief it in his memorandum supporting his suppression motion. Determining whether a search is reasonable under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion . . . against the importance of the governmental interests at stake." *State v. Wiegand*, 645 N.W.2d 125, 134 (Minn. 2002). This record contains no evidence or analysis by the district court regarding the government's interest in having the off-duty deputy perform the search rather than the on-duty officers. Because a Fourth Amendment reasonableness analysis is fact-specific, and the issue was not raised to or considered by the district court, we conclude that the off-duty officer issue was forfeited.

**Affirmed.**